# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| BITUMINOUS CASUALTY CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 10-cv-04118-NKL |
| | ) | |
| UNITED HRB GENERAL CONTRACTORS, | ) | |
| INC. d/b/a JEFF CITY INDUSTRIES, INC., | ) | |
| | ) | |
| OZARK MOUNTAIN CONSULTANTS, | ) | |
| ENGINEERS AND SURVEYORS, INC., | ) | |
| | ) | |
| JEFF CITY INDUSTRY, INC. d/b/a | ) | |
| J.C. INDUSTRIES, INC., | ) | |
| | ) | |
| CITY OF BRANSON, | ) | |
| | ) | |
| ELEXCO, INC., and | ) | |
| | ) | |
| SAFECO CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>PLAINTIFF'S MEMORANDUM IN SUPPORT</u>

COMES NOW Plaintiff, BITUMINOUS CASUALTY CORPORATION, by and through

its attorneys, BETH C. BOGGS and BOGGS, AVELLINO, LACH & BOGGS, L.L.C., and

respectfully submit this following Memorandum of Law in Support of its Motion for Summary

Judgment:

### <u>Table of Contents</u>

| | | |
|---|---|---|
| Table of Authorities | ............................................................. | 2 |
| Statement of Material Facts | ............................................................. | 4 |
| Introduction | ............................................................. | 13 |
| Summary Judgment Standard | ............................................................. | 13 |
| Branson's Claims | ............................................................. | 14 |

Branson's Petition Does Not Allege Any "Occurrences"  ......  14

In the Alternative, Missouri Law Recognizes That the  ......  18
Operative Facts of Branson's Claims Do Not Constitute
an "Occurrence"

Even If Branson's Purchase of Additional Easements  ......  20
Could Be Considered an "Occurrence," Those Damages
Are Not "Property Damage" as the Term is Defined in
the Policy

Lastly, the Exclusions in the Policy Would Preclude  ......  21
Coverage For All of Branson's Claims, Had Any of
Them Made A Claim For "Property Damage" Caused
By An "Occurrence"

OMC's Claims  ...................................................................  24
Conclusion  ...................................................................  26

## Table of Authorities

*Aetna Cas. & Sur. Co. v. Haas*,  ...........................................  14
422 S.W.2d 316 (Mo. 1968).

*Allstate Ins. Co. v. Burrough*,  ...........................................  14
120 F.3d 834 (8th Cir. 1997)

*American States Insurance Co. v. Mathis*,  ......................................  15-20
974 S.W.2d 647 (Mo. App. 1998)

*Angelina Cas. Co. v. Pattonville-Bridgeton Terrace Fire Protection Dist.*, ...  14
706 S.W.2d 483 (E.D. 1986)

*Bank of America Nat'l Trust & Savings Ass'n v. Shirley*,  ..........................  13
96 F.3d 1108 (8th Cir. 1996)

*Butters v. City of Independence*,  ...........................................  14
513 S.W.2d 418 (Mo.1974)

*Clayton Center Associates v. W.R. Grace and Company*,  ................  18-19
861 S.W.2d 686 (E.D. 1993)

2

*Columbia Mut. Ins. Co. v. Epstein,* ................................................. 17-18, 20
239 S.W.3d 667 (E.D. 2007)

*Columbia Mut. Ins. Co. v. Schauf,* ................................................. 14, 21-22
967 S.W.2d 74 (Mo. banc 1998)
*Dupps v. Travelers Ins. Co.,* ............................................................ 14
80 F.3d 312 (8th Cir.1996)

*Glens Falls Ins. v. Donmac Golf Shaping,* ...................................... 22
203 Ga.App. 508, 417 S.E.2d 197 (Ga. Ct. App. 1992)

*Hawkeye-Security Ins. Co. v. Davis,* ............................................... 16
6 S.W.3d 419 (Mo. App. 1999)

*Hawkeye–Security Ins. Co. v. Iowa National Mut. Ins. Co.,* ............... 14
567 S.W.2d 719, 721 (Mo. App. E.D. 1978)

*Korte Construction Company v. Deaconess Manor Association,* ............. 18-19
927 S.W.2d 395, 404-405 (Mo. App. E.D. 1996)

*Laidlaw Waste System, Inc. v. Mallinckrodt, Inc.,* ........................... 19
925 F.Supp. 624 (E.D. Mo. 1996)

*McCormack v. Citibank, N.A.,* ......................................................... 13
100 F.3d 532, 537 (8th Cir.1996)

*St. Paul Fire and Marine Ins. Co. v. Building Construction Ent., Inc.,* ..... 16-17
484 F. Supp. 2d 1004 (W.D. Mo. 2007)

*Sharp Brothers Contracting Co. v. American Hoist and Derrick Co.,* ..... 18-19
703 S.W.2d 901, 903 (Mo. Banc 1986) (*Sharp I*)

*Sharp Brothers Contracting Co. v. American Hoist and Derrick Co.,* ..... 18-19
714 S.W.2d 919 (Mo. App. W.D. 1986) ("*Sharp II*")

*Steve Spicer Motors, Inc. v. Federated Mut. Ins. Co.,* ......................... 14
758 S.W.2d 191, 193 (Mo. App. S.D. 1988.)

*Summerchase Second Ed. Subdivision Homeowners Ass'n v.* ................. 18
*Taylor-Morley, Inc.,* 146 S.W.3d 411, 417 (Mo. App. E.D. 2004)

*Travelers Insurance Co. v. Cole,* ..................................................... 14
631 S.W.2d 661, 664 (Mo. App. E.D. 1982).

3

*Zipkin v. Freeman*, .......................................................... 14
436 S.W.2d 753 (Mo. banc 1968)

Fed. R. Civ. P. 56(c) .......................................................... 13

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1.      Bituminous insured United HRB General Contractors, Inc. and J.C. Industries, Inc. (a fictitious name for Jeff City Industry, Inc.) (hereinafter collectively referred to as "the JCI Entities"), under commercial general liability policies,  No.  CLP3 146 203, which was in effect from July 1, 2003, to July 1, 2004, and Bituminous Policy No. CLP3 192 774 B, which was in effect from July 1, 2004, to July 1, 2005.  (Exhibits A and B, respectively).

2.      On or about April 26, 2004, Branson and one or more of the JCI Entities entered into a written construction contract for constructing improvements within the City of Branson, known as the Table Rock Acres Sewer Improvement Project.  (Exhibit C).

3.      One or more of the JCI Entities are also a party to a performance bond, with Defendant Safeco Corporation as the surety for this project.  (Exhibit C).

4.      On or about October 22, 2008, Branson filed a Petition in the Circuit Court of Taney County, Missouri, alleging two counts against one or more of the JCI Entities, one for action on performance bond, and the other for breach of contract ("the underlying lawsuit"). The case is captioned <u>City of Branson, Missouri, Plaintiff, v. Jeff City Industry, Inc. d/b/a J.C. Industries, Inc. and Safeco Insurance Company of America, Defendants</u>, cause number 08AF-CC00850.  (Exhibit C).

5.     In that Petition, Branson alleges one or more of the JCI Entities failed to "duly and faithfully observe, perform, or abide by each and every covenant, condition and part of the referenced contract documents." (Exhibit C).

6.     On or about August 19, 2009, OMC filed an Answer to the Third Party Petition and Cross Claim against one or more of the JCI Entities, alleging a failure to procure insurance and negligent misrepresentation. (Exhibit D).

7.     Branson seeks damages against OMC and the JCI Entities in excess of $1.7 million. (Exhibit C).

8.     The Policies provide the following definitions for terms contained therein:

8.     "Impaired Property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a.     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b.     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   a.     The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b.     Your fulfilling the terms of the contract or agreement.

9.     "Insured contract" means:

   a.     A contract for a lease of premises. However, that portions of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or

5

temporarily occupied by you with permission of the owner is not an "insured contract";

**b.**     A sidetrack agreement;

**c.**     Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.**     An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.**     An elevator maintenance agreement;

**f.**     That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability or another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement....

* * *

**13.**     "Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.**     "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

**a.**     False arrest, detention, or imprisonment;

**b.**     Malicious prosecution;

**c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person

6

occupies, committed by or on behalf of its owner, landlord or lessor;

**d.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.**     Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.**     The use of another's advertising idea in your "advertisement"; or

**g.**     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

**16.**     "Products-completed operations hazard":

**a.**     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)**     Products that are still in your physical possession; or

**(2)**     Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)**     When all of the work called for in your contract has been completed.

**(b)**     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

7

      **(c)**     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement; but which is otherwise complete, will be treated as completed.

**17.**    "Property damage" means:

      **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**21.**    "Your Product":

      **a.**    Means:

          **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

             **(a)**    You;

             **(b)**    Others trading under your name; or

             **(c)**    A person or organization whose business or assets you have acquired; and

8

        **(2)**      Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.**    Includes:

        **(1)**      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

        **(2)**      The providing of or failure to provide warnings or instructions.

  **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your work":

  **a.**    Means:

        **(1)**      Work or operations performed by you or on your behalf; and

        **(2)**      Materials, parts or equipment furnished in connection with such work or operations.

  **b.**    Includes

        **(1)**      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)**      The providing of or failure to provide warnings or instructions.

Exhibits A and B.

  9.    The policies contain the following applicable exclusions:

    This insurance does not apply to:

9

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from' the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement....

\* \* \*

j. **Damage To Property**

"Property damage" to:

\* \* \*

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part. of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

10

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.**     **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**     **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.**     **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**     **Recall Of Products, Work Or Impaired Property**

11

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exhibits A and B.

10.    The policy also contains the following pertinent Insuring Agreement for Coverage B, Personal and Advertising Injury Liability:

**1.        Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result...

Exhibits A and B.

**Introduction**

The City of Branson ("Branson") has filed suit against Jeff City Industry, Inc. d/b/a J.C. Industries, Inc., in the Circuit Court for Taney County, Missouri. In that suit, Branson has alleged two counts - one for recovery on a performance bond (issued by Safeco), and one for breach of contract. Plaintiff Bituminous Casualty Corporation issued two Commercial Lines liability policies, No. CLP3 146 203, which was in effect from July 1, 2003, to July 1, 2004, and No. CLP3 192 774 B, which was in effect from July 1, 2004, to July 1, 2005, to Jeff City Industry, Inc., J.C. Industries, Inc., and United HRB General Contractors, Inc. (hereinafter collectively referred to as "JCI"). Bituminous has brought this action seeking a declaration that there is no coverage under either policy for the damages alleged by Branson. Furthermore, Ozark Mountain Consultants, Engineers, and Surveyors, Inc., ("OMC") filed a Third Party Petition against JCI, alleging JCI failed to procure insurance as it had agreed to in its contract with OMC, and negligent misrepresentation. Bituminous also seeks a declaration that neither of OMC's claims are covered under the policy.

**Summary Judgment Standard**

"Summary judgment is appropriate only if the record, viewed in the light most favorable to the nonmoving party, presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Allstate Ins. Co. v. Burrough*, 120 F.3d 834, 838 (8th Cir. 1997) (citing *McCormack v. Citibank, N.A.*, 100 F.3d 532, 537 (8th Cir.1996) and referring to Fed. R. Civ. P. 56(c)). "A grant of summary judgment is proper '[w]here the unresolved issues are primarily legal rather than factual....'" *Id.* (quoting *Bank of America*

13

*Nat'l Trust & Savings Ass'n v. Shirley*, 96 F.3d 1108, 1111 (8th Cir. 1996)). A federal court's interpretation of an insurance policy in a diversity case is governed by state law. *Id.* (referring to *Dupps v. Travelers Ins. Co.*, 80 F.3d 312, 313 (8th Cir.1996)).

The provisions of an insurance policy are read in the context of the policy as a whole, and the policy language is given its ordinary meaning unless another meaning is plainly intended. *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc 1998). Except for public policy or statutory constraints, an insurer may cut off liability under its policy by using clear and unambiguous language. *Aetna Cas. & Sur. Co. v. Haas*, 422 S.W.2d 316, 321 (Mo. 1968). An insurer's duty to defend is determined from the provisions of the policy and the allegations of the petition charging liability of the insured. *Zipkin v. Freeman*, 436 S.W.2d 753 (Mo. banc 1968); *Travelers Insurance Co. v. Cole*, 631 S.W.2d 661, 664 (E.D. 1982). "While the duty to defend is broader than the duty to pay a judgment [citation] the former must appear from the policy and the petition." *Angelina Cas. Co. v. Pattonville-Bridgeton Terrace Fire Protection Dist.*, 706 S.W.2d 483 (E.D. 1986) (citing *Butters v. City of Independence*, 513 S.W.2d 418 (Mo.1974)). "If the petition against the insured alleges facts not within the coverage of the insurance policy, no duty devolves upon the insurer to defend." *Steve Spicer Motors, Inc. v. Federated Mut. Ins. Co.*, 758 S.W.2d 191, 193 (S.D. 1988.) (citing *Travelers*, 631 S.W.2d at 665; and *Hawkeye–Security Insurance Co. v. Iowa National Mutual Insurance Co.*, 567 S.W.2d 719, 721 (E.D. 1978)).

## BRANSON'S CLAIMS

### Branson's Petition Does Not Allege Any "Occurrences"

Branson's petition makes no allegations other than the action for the performance bond,

14

and for breach of contract. Branson specifically alleges ten acts by JCI that were not performed in accordance with the contract. These specifically are that JCI 1) improperly bedded sewer piping, 2) over-trenched portions of sewer piping, 3) under-trenching portions of sewer piping, 4) improperly aligned portions of the trenching for the sewer piping, 5) improperly installed and modified manholes in the sewer system, 6) improperly sloped portions of the sewer piping, 7) improperly constructed and/or installed sewing piping anchors, and 8) made improper sewer line connections to the sewer piping 9) constructed outside of the easements in the contract, and 10) failed to perform appropriate project clean-up and roadway restoration. (Exhibit C).

The case law in Missouri is clear that Branson's case does not constitute an "occurrence" as that term is defined by a CGL policy. There are two cases that address the issue directly in the context of actions brought for defective construction work. In *American States Insurance Co. v. Mathis*, 974 S.W.2d 647 (Mo. App. 1998), the Missouri Court of Appeals for the Eastern District, confronted with a definition of "occurrence" identical to the one used in the policy in the present case, held that a breach of contract cannot be an "occurrence" as defined by the CGL policy because there is nothing "accidental" about the insured's failure to perform his business operations to the customer's expectations. *Id.* at 650. In this regard, the court stated: "The CGL policy does not serve as a performance bond, nor does it serve as a warranty of goods and services." *Id.* at 649 (citation omitted). Significantly, the court held that there was no coverage for <u>any</u> of the claims made by the Plaintiff in the underlying action, despite the fact that he apparently attempted to recover on overlapping theories of negligence as well as breach of contract and warranty. *Id.* at 648.

15

In *Mathis*, the court addressed a situation in which a subcontractor violated a contract by digging trenches at the wrong grade and slope. *Id.* at 648  The trenches were part of the construction of a federal penitentiary, and the error in the digging forced the general contractor to remove the improperly constructed duct banks, remove electrical conduit and cable, and retrench the areas according to the design specifications. *Id.* The general contractor then brought suit against the subcontractor, who tendered its defense to American States under its general liability policy. *Id.*  The court held that American States did not have a duty to defend the subcontractor.  *Id.*  The court stated that "the cause of Guarantee's loss was EMCO and Mathis' failure to construct the ducts according to contract specifications.  Such a breach of a defined contractual duty cannot be an 'accident'." *Id.* at 650.  The court further noted that the alleged breach did not cause any unintended accident to other property.  *Id.*

The Missouri Court of Appeals for the Southern District followed the holding of *Mathis* in *Hawkeye-Security Insurance Co. v. Davis*, 6 S.W.3d 419 (Mo. App. 1999).  In that case, the court held that the insured's failure to construct a new home properly could not be characterized as an "undesigned or unexpected event", and therefore, the Plaintiffs did not allege an "occurrence" under the CGL policy in their action for breach of contract and implied warranty.  *Id.* at 426.  The court noted that the record demonstrated that the insured had sufficient control and management over the construction process to have allowed him to fulfill his contractual obligations.  *Id.*

*Mathis* has also been favorably cited in *St. Paul Fire and Marine Insurance Co. v. Building Construction Enterprises, Inc.*, 484 F. Supp. 2d 1004 (W.D. Mo. 2007).  In *St. Paul*, the court dealt with circumstances substantially similar to *Mathis*.  The defendant had

16

contracted to construct a training facility for the Army Corps of Engineers, and hired subcontractors to construct "duct banks", which were a pattern of PVC conduit encased in concrete that protected data electrical and communications lines. *Id.* at 1006-1007. Deficiencies were later noted in the duct banks, and the Army demanded that BCE correct the deficiencies. *Id.* at 1007. BCE then made a claim to St. Paul for the expenses it incurred in repairing the defects. The court cited to *Mathis* and held that the improper construction of the duct banks did not give rise to coverage because the breach of contract did not constitute an occurrence. *Id.* at 1010.

In the instant case, it is clear that Branson has only alleged JCI breached its contract, by failing to construct the sewer project correctly. All of the allegations in both counts stem from those alleged breaches. Branson's petition does not even have a count for negligence. *Mathis* is applicable here.

*Mathis* has been limited in one specific manner – if the claimant's damages arise out of the incorporation of a product that, through no fault of the insured, was defective, there could be an "occurrence." *Columbia Mutual Insurance Company v. Epstein*, 239 S.W.3d 667, 671 (E.D. 2007)). However, in *Epstein*, there were allegations of products liability for a defective product, in addition to the claims of breach of contract. *Id.* at 671. In *Epstein*, a concrete foundation in a house did not meet the applicable building code, and the error was not discovered until the subfloor had been installed and framing of the house had begun. *Id.* at 669. The claim alleged that the concrete itself was defective. *Id.* The court distinguished the case from *Mathis*, which the court stated was "purely a breach of contract case." *Id.* at 672. Accordingly, the court held that there was an "occurrence" under the policy. *Id.*

17

In this matter, there are no products liability claims. Instead, it is purely a breach of contract action (with a prayer for recovery of a performance bond based on the breach of the contract). Therefore, the *Epstein* Court's distinguishing factor is not present, and instead, like *Mathis*, this is purely a breach of contract action. Under well-founded Missouri law, there is no "occurrence," and therefore, no covered claim.

## In the Alternative, Missouri Law Recognizes That the Operative Facts of Branson's Claims Do Not Constitute an "Occurrence"

Although Branson, the plaintiff below and master of its claims, has not alleged anything other than breach of contract, even if the pleadings below were rewritten to include a claim alleging an accident, there would be no coverage. Specifically, "where the only damage complained of is an economic loss resulting from defects in [an] item built pursuant to a contract, a negligence action does not lie." *Summerchase Second Edition Subdivision Homeowners Association v. Taylor-Morley, Inc.*, 146 S.W.3d 411, 417 (E.D. 2004). See also *Korte Construction Company v. Deaconess Manor Association*, 927 S.W.2d 395, 404-405 (E.D. 1996) ("Where the only damage complained of is an economic loss resulting from defects in an item sold (or built) pursuant to contract, an action *ex contractu* affords the plaintiff complete relief, and a *coterminous* negligence action does not lie."). The *Korte* court relied upon *Clayton Center Associates v. W.R. Grace and Company*, 861 S.W.2d 686 (E.D. 1993) and *Sharp Brothers Contracting Co. v. American Hoist and Derrick Co.*, 714 S.W.2d 919 (W.D. 1986) ("*Sharp II*").

*Sharp II* was an appellate reconsideration, following a remand from the Missouri Supreme Court in *Sharp Brothers Contracting Company v. American Hoist and Derrick*

18

*Company*, 703 S.W.2d 901, 903 (Mo. Banc 1986) (*Sharp I*), where the Court held there could be no products liability/strict liability claims in tort as a basis for recovery of damages to the product in question itself. Commonly called the "economic loss doctrine," Missouri law does not allow the recovery of purely economic loss on a theory of strict liability in tort when the only damage is to the product itself. *Id.* See also *Clayton Center* and *Laidlaw Waste System, Inc. v. Mallinckrodt, Inc.*, 925 F.Supp. 624 (E.D. Mo. 1996).

The *Sharp II* court, following the ruling of the Missouri Supreme Court, Missouri law restricts plaintiffs in matters "where only economic loss of the product sold is involved," permitting only actions seeking the "limited remedies available under warranty provisions." *Sharp II*, 714 S.W.2d 919, 922. *Sharp II*, distinguishing between the original defective manufacture and design and a subsequent alleged negligent repair, noted that there could be no negligence action based only on the defective manufacture and design of the product originally sold or delivered to the claimant, when the only damages sought were to that product itself. *Id.* Thus, the portion of the negligence count that alleged negligent design and construction of the product at the time it was delivered to the claimant was not a recognized claim under Missouri law. *Id.*

In this case, the only damages claimed by Branson are the economic-loss damages from the allegedly incorrect construction of the sewer project. Branson has filed the proper action for its claims - a suit for breach of contract. A negligence action would not be permitted under Missouri law. *Korte*, 927 S.W.2d 395, 405.

Indeed, *Mathis* recognizes that contractual failings, even if couched in terms of negligence, would not constitute "occurrences" under a general liability policy. *Mathis*, 974

19

S.W.2d 647 (E.D. 1998) (Missouri law is "manifestly clear that a claim . . . that arises out of a breach of a contractual obligation . . . does not constitute an 'accident' or an 'occurrence' under a CGL policy such as [the insurer's]").  Even *Epstein's* limited exception would not apply to such a claim, as it noted the *Mathis* plaintiff had set up his petition "to state that the defendant had failed to meet some contract terms, intentionally or negligently."  *Epstein,* at 672.  No "occurrence" is present in this case, because, unlike *Epstein*, the allegations contained in Branson's Petition allege JCI failure to perform its obligations under the contract caused the City's damages.  In *Epstein*, the court held there was an accident and/or occurrence, because Epstein sold and delivered the concrete in a defective condition, **through no fault of his own**, damaged the subfloor and framing of the home, **and** that neither the defect in the concrete nor the damage to the home was foreseeable to Epstein."  *Id.* at 672-673 (emphasis added).  There are no allegations that JCI lacks fault and/or did not foresee the damages, merely allegations of contractual non-compliance.  The facts, as alleged by Branson, do not constitute an "occurrence."

### Even If Branson's Purchase of Additional Easements Could Be Considered an "Occurrence," Those Damages Are Not "Property Damage" as the Term is Defined in the Policy

In this matter, the policy contains the following definition of "property damage":

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(SOF, ¶8).  Branson alleges JCI went beyond the bounds of the easements it possessed, and

was thus apparently forced to acquire additional easements for the project. Although this could be considered an accident, as opposed to simply a failure to comply with the boundaries delineated in the contract, no matter how JCI's actions with respect to the need to acquire easements is construed, the acquisition of additional easements does not constitute "property damage." By virtue of the fact that Branson had to acquire **subsequent additional** easements, whatever physical injury (if any) the subsequently added areas of real estate suffered, none of the property was in any way owned by Branson at the time of injury, nor did the acquisition result in a loss of use for Branson. Branson was simply forced to purchase additional easements, giving it the uses granted by the easements. An easement is a property right, not actual property.

### Lastly, the Exclusions in the Policy Would Preclude Coverage For All of Branson's Claims, Had Any of Them Made A Claim For "Property Damage" Caused By An "Occurrence"

The Bituminous Policy contains numerous exclusions that would preclude coverage, if any of Branson's allegations could be considered "property damage" caused by an "occurrence." Even in the event that the coverage terms of the CGL policy were triggered by the claims made against JCI in the underlying lawsuit, coverage should be excluded under Exclusions (j) through (n). These are standard Commercial General Liability exclusions which are collectively referred to as the "business risk" exclusions. *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc 1998). They overlap considerably and are rarely analyzed in isolation. The general purpose behind the exclusions is to exclude coverage for those risks that are the "normal, frequent, or predictable consequences of doing business, and

which business management can and should control and manage." *Schauf*, 967 S.W.2d at 77

(citation omitted). The exclusions are based "on the apparently simple premise that general

liability coverage is not intended as a guarantee of the quality of an insured's product or

work." *Id.* (citation omitted).

> **j.** **"Damage to Property"**

This particular exclusion operates on all of the damages asserted by Branson. The

pertinent subsections state:

> **(5)** That particular part of real property on which you or any contractors or
> subcontractors working directly or indirectly on your behalf are
> performing operations, if the "property damage" arises out of those
> operations; or
>
> **(6)** That particular part. of any property that must be restored, repaired or
> replaced because "your work" was incorrectly performed on it.

(SOF ¶9). The Missouri Supreme Court, in construing this exclusion, has held that the

"exclusion is designed to exclude from coverage the business risk of faulty workmanship."

*Schauf*, 967 S.W.2d 74, 79 (Mo. banc 1998) (citing *Glens Falls Ins. v. Donmac Golf Shaping*,

203 Ga.App. 508, 417 S.E.2d 197, 200 (Ga. Ct. App. 1992)). Further, the exclusion applies

if the damage "arises out of" the insured's operations on real property, and does not need to

be an instance of faulty workmanship. *Id.* at 80.

In the instant case, all of the damages claimed by Branson arise out of JCI's operations

on the real property the sewer project was being performed upon. To the extent Branson

seeks restoration damages for JCI's allegedly faulty work, those damages are also excluded

under the "Damage to Property" exclusion. The damages are all present on that property. The

policy excludes them from coverage.

22

**k. Damage To Your Product**
"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(SOF ¶9). These two exclusions work in tandem to preclude Branson's claimed damages. Although Branson's allegations do not seem to include any allegations that could be construed to by JCI's "product," all of them reference JCI's "work," and allege it was done improperly. Indeed, every single allegations of breach made by Branson arises out of improperly done work by JCI. Exclusion precludes coverage for "'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'". In the policy, "your work" is defined simply as "work or operations performed by you or on your behalf" as well as "[m]aterials, parts or equipment furnished in connection with such work or operations." As defined by the policy, the property damage alleged by Branson is included in the "products-completed operations hazard", because the property damage alleged by Branson occurred away from premises rented or owned by the JCI and clearly arose from JCI's "work," as it is defined under the policy. All of the damages claimed by Branson arise out of the operations conducted by JCI ion the sewer project. Exclusion l clearly operates to exclude coverage for the damages claimed by Branson.

**m. Damage To Impaired Property Or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in

23

"your product" or "your work"; or

(2)      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(SOF ¶9). As with the other business risk exclusions, Exclusion m. perfectly comports to Branson's allegations. "Impaired Property" is defined to mean: "tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.**      The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.**      Your fulfilling the terms of the contract or agreement.

(SOF ¶9). As Branson's second count seeks the damages for restoring JCI's allegedly defective work on the sewer project, and that the property can be restored by proper installation of the sewer project, this exclusion precludes coverage for all Branson's damages.


## OMC'S CLAIMS

When OMC was brought into the underlying case, it filed a Crossclaim against JCI. OMC alleges two counts – breach of contract and negligent misrepresentation. Both these counts arise out of JCI's alleged failure to procure insurance to protect OMC from claims, including the original action brought by Branson. Neither of these claims by OMC are covered under the Bituminous policies.

24

First, OMC's actions are for economic damages of any amounts it may be liable to pay in the underlying action, and defense costs it is suffering in the underlying action, because it does not have the insurance JCI was allegedly supposed to procure for to protect OMC. These damages are not "property damage" or "bodily injury" as defined under the policies. "Property damage" requires either physical injury or loss of use of tangible property. OMC's alleged loss is not tangible in nature, therefore there is no coverage under Coverage A.

There is also no coverage under Coverage B, the Personal and Advertising coverage. The Insuring Agreement for that Coverage provides that it will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." (SOF ¶10) "Personal and Advertising Injury is defined as:

> injury, including consequential "bodily injury" arising out of one or more of the following offenses:
> a.      False arrest, detention, or imprisonment;
> b.      Malicious prosecution;
> c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e.      Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f.      The use of another's advertising idea in your "advertisement"; or
> g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(SOF ¶10). Clearly, there is no offense which comports with OMC's allegations. The closest one, d., requires slander, libel, or disparagement in the publication of material, but OMC does not allege the misrepresentation had any of these qualities. Instead, JCI's alleged

representations it would procure insurance for OMC are merely (alllegedly) untrue. There is no component of defamation in the representation, and OMC does not claim any harm from any defamatory qualities of the representation. Its only alleged harm is a lack of insurance, and the costs it has incurred due to that lacking. The other offenses are completely unrelated to OMC's claims. There is no "Personal and Advertising Injury" here, and therefore, no coverage under Coverage B.

## CONCLUSION

There is no coverage for any of Branson's claims against JCI. Branson makes no allegations of "property damage" resulting from an "occurrence," as required under the bodily injury and property coverages of the policies. Even assuming some claim of Branson's could be squeezed into coverage, coverage is defeated by the business risk Exclusions, (j) through (n)) of the policy, most especially Exclusions j.(5) and (6), l., and m. At its essence, Branson's claims in the underlying lawsuit allege JCI failed to perform its work properly and failed to produce the sewer project for which it contracted. Breaches of contract are not occurrences under a commercial liability policy, and s Missouri courts have observed in applying the business risk exclusions, the purpose of CGL coverage is not to warrant the quality of the insured's work or product. OMC does not make any claim for property damage, and its allegations do not fall into one of the offenses for which "Personal and Advertising Injury" coverage is provided. There simply is no coverage for any of the allegations against JCI in the underlying suit.

WHEREFORE, Bituminous Casualty Corporation respectfully request this Honorable Court to enter an Order granting summary judgment in favor of Bituminous and against the

26

defendants, and grant the declaratory relief prayed for in Bituminous' Complaint.

Respectfully submitted,

**BITUMINOUS CASUALTY CORPORATION**

By:_____/s/ Beth C. Boggs_____#43089
       Beth C. Boggs     #43089
       BOGGS, AVELLINO, LACH & BOGGS, L.L.C.
       7912 Bonhomme Ave., Suite 400
       St. Louis, MO 63105
       (314) 726-2310 PHONE
       (314) 726-2360 FAX
       **Attorneys for Plaintiff,**
       **Bituminous Casualty Corporation**

27

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the Court's Electronic Filing System this 20th day of September, 2011, to:

Michael A. Dallmeyer
Polsinelli Shughart, PC
Riverview Office Center
221 Bolivar Street
P. O. Box 1069
Jefferson City, MO 65102-1069
(573) 636-8135 - Phone
(573) 636-5226 - Fax
Email: mdallmeyer@polsinelli.com
**Attorneys for Defendant Elexco, Inc.**

Paul G. White
Neale & Newman, LLP
1949 E. Sunshine, Suite 1-130
Springfield, MO 65804
(417) 882-9090 - Phone
(417) 882-2529 - Fax
Email: pwhite@nnlaw.com
**Attorneys for Defendant,**
**City of Branson, MO**

Mr. David M. Buffo
David B. Raymond
HuschBlackwell Sanders LLP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
(816) 983-8253 - Phone
(816) 983-8080 - Fax
**Attorneys for Defendants,**
**United HRB General Contractors, Inc.,**
**d/b/a Jeff City Industries, Inc.**
**and Safeco Corporation**

J. Todd Applegate
Rabbitt, Pitzer & Snodgrass, PC
100 South Fourth Street
Suite 400
St. Louis, MO 63102-1821
(314) 421-5545 - Phone
(314) 421-3144 - Fax
Email: applegate@rpslaw.com
**Attorneys for Defendant**
**Ozark Mountain Consultants,**
**Engineers and Surveyors, Inc.**

   /s/ Beth C. Boggs