UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| BITUMINOUS CASUALTY CORPORATION ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:10-cv-04118-NKL |
| ) | |
| UNITED HRB GENERAL CONTRACTORS, ) | |
| INC. d/b/a JEFF CITY INDUSTRIES, INC., ) | |
| OZARK MOUNTAIN CONSULTANTS, ) | |
| ENGINEERS AND SURVEYORS, INC., ) | |
| and CITY OF BRANSON ) | |
| ) | |
| Defendants. ) | |

## BITUMINOUS CASUALTY CORPORATION'S REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, Bituminous Casualty Corporation, by and through Counsel, Beth C. Boggs and Boggs, Avellino, Lach & Boggs, L.L.C. and for its Reply to Defendant United HRB General Contractors, Inc.'s and Jeff City Industries, Inc. d/b/a JC Industries' Suggestions in Opposition to Plaintiff 's Motion for Summary Judgment respectfully submits the following:

### Responses to JC Industries' Additional Statements of Uncontroverted Material Facts

1.      Admitted.

2.      Admitted.

3.      Denied, as this issue is at issue in the underlying action, and is disputed by the parties below.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Objection.  Irrelevant and immaterial as to the issues in the Summary Judgment Motion.

8.      Objection.  The facts stated are immaterial and irrelevant to the premises of the Motion for Summary Judgment.

9.      Objection.  Immaterial and irrelevant.

10.     Objection.  Immaterial and irrelevant.

11.     Admitted.

12.     Admit that the City of Branson alleges that JC Industry caused work to occur outside the limits of the project.  Plaintiff is without knowledge regarding the rest of the allegations in Statement of Fact 12, and therefore denies same.

13.     Admitted.

14.     Denied, the statement deals with an ultimate question of fact to be determined by the jury below.

15.     Admit that JC Industries submitted a lawsuit to Bituminous and requested that Bituminous defend JC Industries.  Admit that Bituminous retained counsel to defend JC Industries and for free for three years.  Bituminous objects to the statement that Bituminous agreed to defend, as Bituminous agreed to defend under a reservation of rights, to which JC Industries agreed.

### Section I - The City of Branson's Petition does not allege any facts that give rise to a claim potentially within the CGL's coverage.

JC Industries' first argument is that the facts contained in the Petition potentially give rise to a claim within coverage.  While this contention is certainly incorrect, JC Industries' first

assertion that Bituminous previously "made the decision and had a duty to defend JC Industries... and Bituminous agreed to defend JC Industries", is incorrect as Bituminous defended JC Industries under a reservation of rights. Bituminous reserved the right to dispute coverage at a later time. The court should not be confused by the mischaracterization by JC Industries of the defense provided. JC Industries agreed to that defense.

In order to claim that the Petition filed by the City of Branson gives rise to a claim potentially within coverage due to facts alleged within it, JC Industries goes outside of the Petition and alleges facts it believes are its defenses to the allegations contained in the Petition by Branson. For instance, on page 9, JC Industries cites Missouri law that an accident is an event taking place without one's foresight or expectation. Since the allegations in the Petition allege no such think, JC Industries goes outside of the Petition filed by Branson, and claims that the bedding material was authorized by OMC, that the engineering firm approved some of its work, and that OMC agreed that the work complied with contract specifications. All of these facts are outside of the Petition filed by Branson, which merely alleges a breach of contract. Even if JC Industries' allegations were true, its misplaced reliance upon OMC does not change the fact that Branson is suing for breach of contract, which is a foreseeable damage, and is not an "occurrence" under Missouri law. *American States Insurance Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo. App. 1998).

There are no facts alleged in the Petition that state that JC Industries was somehow unaware of the contractual duties and requirements if had promised Branson. JC Industries, according to the Petition, failed to properly bed the lines. There is no allegation that JC Industries was unaware of how to properly bed it. Whether JC Industries relied upon OMC to its detriment is a proper question in an indemnity and/or contribution claim against OMC

for the damages claimed by Branson. However, it does in any way contradict the allegations of the Petition that JC Industries failed to comply with the contract terms.

**Section II - The economic loss doctrine bars any potential coverage for JC Industries' Claim of Coverage under the policy**.

JC Industries continues to allege that the City of Branson's lawsuit, which is only directed against it, and only alleges breach of contract and action on a performance bond, somehow also alleges facts that OMC approved improper bedding material and that is what caused the injury. Branson does not allege any such thing. Instead, this assertion is JC Industries' defense to the allegations of Branson. JC Industries confuses its liability arising from a breach of contract with its belief that it should receive indemnification from OMC, because of its error in approving improper bedding material. The allegations by Branson are only breach of contract. The only damages alleges by Branson are its economic losses resulting from defects in an item built pursuant to a contract, which are not considered accidents under Missouri law. *Clayton Center Associates v. W.R. Grace and Company*, 861 S.W.2d 686 (E.D. 1993). Branson has determined its breach of contract action will sufficiently permit it to recover for its claimed harm. JC Industries' liability to Branson is not based on an accident, its liability to Branson is based on its alleged breach of its contractual duties. Whether OMC has liability to JC Industries due to its accident of allegedly approving improper fill material is immaterial.

JC Industries attempts to graft its defense and allegations of improper bedding approved by OMC into Branson's breach of contract claim, which does not claim JC Industries acted negligently. Instead, Branson alleges JC Industries breached its contract by failing to follow the contract and regulations and rules regarding proper bedding of the pipelines. Indeed, the

duty allegedly breached was simply a failure to comply with the contractual terms and conditions. Whether or not JC Industries meant to improperly bed the material, Branson can win just by proving that contractually they were obliged to. Indeed, since this is Branson's only allegation, and not there was somehow a negligent or accidental bedding of the pipes, Branson's victory will be entirely based upon whether or not under the contract JC Industries was obliged to do so. These actual allegations of JC Industries obligations and its alleged breach, are not "accidents" or "occurrences" as defined under Missouri law.

### Section III - The acquired easements City of Branson do not give rise to any claim within the CGL's policy coverage.

JC Industries asserts that Bituminous, "without citing any authority," claims no "property damage" resulted from Branson's alleged forced acquirement of easements. With respect to that argument, Bituminous recognized that the easements Branson claims it was forced to acquire were potentially caused by an "accident" (as opposed to all other of Branson's allegations), and, therefore, addressed the issue of whether the acquisition could be considered "property damage" arising out of an "accident." An easement is a property right, not actual tangible property. Therefore, it cannot meet the definition of "property damage": "a. **Physical** injury to **tangible** property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of **tangible** property that is not **physically** injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." The acquisition of easements does not fall into the definition of property damage.

In the case cited by JC Industries, *Spirco Environmental, Inc. v. American International Specialty Lines Insurance*, 555 F.3d 637, 640-641 (8th Cir. 2009), the court found that an

allegation asserting a breach of contract actually asserted property damage, due to contamination of asbestos in a property that had to be partially destroyed and remediated. In *Spirco,* there was no intangible property right - there was allegedly asbestos contamination. Branson did not only did not lose an intangible property right, but actually gained additional intangible property rights. There is no physical injury to the easements alleged by Branson, nor could there be, since easements are intangible by their very nature. JC Industries' argument on this matter is meritless.

### Section IV - The exclusions in the CGL policy preclude coverage.

JC Industries makes a strange argument that the business risk exclusions do not preclude coverage under the CGL. Its first argument is that the exclusions do not operate because "the primary complaint from the City of Branson regarding the work of JC Industries on the project was that the bedding material used by JC Industries was improper, defective, and not within the contract specifications, and that OMC approved the bedding material used by JC Industries on the project." However, the allegations by Branson do not include the last portion, that OMC approved the bedding material, and rather, focus on the fact that JC Industries work on the project did not conform to the contractual specifications required under the contract with Branson. There is no issue of fact that precludes coverage from the exclusion due to the fact that exclusions have to do with property damage arising out of the work performed by the insured, for property damage to the product of the insured.

JC Industries also argues that exclusion J. does not apply, because, "Any 'property damage' alleged by the City of Branson because of JC Industries' work on the project, came about primarily because OMC authorized JC Industries to vary from the contract specifications." Once again, Branson's Petition does not alleged OMC is the cause of its

6

damages, instead that is from the self-serving Affidavit included by JC Industries' Response, describing its theory of the case. Branson simply alleges that JC Industries failed to live up to contractual obligations.

More importantly, the cause of the injury is not important, because the exclusion precludes coverage for damages arising from the restoration of property, because JC Industries' work was incorrectly performed on it. Whether or not there was some other cause that created the incorrect performance is immaterial, the only thing that matters is that Branson has alleged JC Industries' work was improperly performed. The simple fact is the allegations in Branson's Complaint, no matter how liberally construed, allege that JC Industries performed work on a piece of real property, and now that piece of real property must be restored and repaired, because JC Industries incorrectly performed the work. All of the damages alleged by Branson, arise out of the work improperly performed by JC Industries on real property. To the extent any the court finds there may have been an "occurrence," exclusion j. precludes any coverage under those for those damages, as the real property in issue in this case, needs restoration or repair due to the improper work performed by JC Industries.

Likewise, exclusion m. applies because the defect arises out of a deficiency or inadequacy in JC Industries' product or work. JC Industries claimed reliance on a third party is immaterial to the exclusion. Instead, according to Branson, JC Industries failed to perform properly under the contract, and there are defects, deficiencies, and inadequacies in the work if performed on the "impaired property" of the project. The exclusions do not have anything to do with JC Industries' ability to foresee the damages - to require an analysis of the exclusions in the first place, there must have already been an unforseeable "occurrence." Therefore, most of JC Industries' arguments regarding exclusion M. is inapposite, as

foreseeability is not an issue in application of the business risk exclusions. Instead, the exclusion applies because, according to Branson's Petition, the site is impaired due to defects, defects, deficiencies, and inadequacies in the product of work provided to it by JC Industries.

### Section V - The claims of OMC do not give any rise even close to within the CGL's policy's coverage.

In its claim that the OMC claims are somehow covered under the CGL policy, JC Industries engages in an analysis of what "occurrence" means within the definitions of the CGL policy. However, JC Industries totally misses Bituminous' argument - whether or not an "occurrence" is present in OMC's allegations (Bituminous could concur that by the very nature of an allegation of a negligent misrepresentation, it is accidental), there is no "property damage" or "bodily injury" that resulted from the occurrence. Instead, OMC claims that JC Industries failed to procure insurance, and misrepresented that it would list OMC as an additional insured under the liability policy. The damages claimed by OMC do not constitute physical injury to tangible property, nor loss of use of physical property, nor bodily injury including death. Instead, these are purely monetary injuries OMC alleges resulted due to JC Industries' failure to properly add it as an insured under the policy. The entire argument proffered by JC Industries has no bearing on this issue. For the purposes of this Motion, Bituminous concedes that the negligent misrepresentation count may be considered to be an accident under Missouri law. However, JC Industries fails to raise even one instance of "property damage" arising out of OMC's claims. Instead, OMC alleges that its damages are additional costs and burdens borne by itself and its insurer in the defense of the case by the claim by Branson. These are economic damages, and neither of them fall within the definition

of property damage or bodily injury. Therefore, there is no coverage for the claims of OMC.

## CONCLUSION

None of the allegations asserted by Branson fall within coverage under the CGL policy. None of the claims by OMC fall under the coverage under the CGL. Specifically, the OMC claims are clearly outside of coverage, as the damages sought by OMC are purely economic, and do not involve property damage nor bodily injury. Branson's allegations, while more complex, are also outside of all coverage. All of the damages asserted by Branson involve a breach of contract, and under Missouri law breaches of contracts are not considered accidents or occurrences. There is nothing within the allegations, without adding in the self-serving facts of JC Industries, that would constitute any interpretation that the damages resulted from an occurrence or accident. Branson has not alleged that such an accident occurred. JC Industries' liability to Branson is entirely based upon contractual rights and obligations, and has nothing to do with accidental or negligent conduct. Although it is possible the additional acquired easement could constitute an "occurrence," as it is likely that JC Industries did not intend to go off of the property, and therefore these types of damages actually are accidental, they do not fall within the definition of property damages, as these additional easements are not tangible physical property injured or loss of use of tangible physical property. These damages also do not fall within coverage whatsoever. To the extent that any damages could fall within coverage, the exclusions contained within the policy certainly prohibit them. Although JC Industries currently claim some of the work was done by subcontractors, which would reduce the effect of exclusion l., exclusions j. and m. clearly apply to all damages otherwise alleged. As exclusion j. makes clear, any property damage that arises out of JC

Industries' operations and requires restoration of property because of its work improperly performed is not covered under the policy. There is no way to contort Branson's breach of contract allegations into something other than an allegation that there was physical damage to real property arising out of the work of JC Industries. Moreover, exclusion ,. is equally applicable, as Branson has alleged the real property involving the sewer project was impaired due to defects, deficiencies, and inadequacies arising out of the work of JC Industries. failure As there are no damages alleged by Branson that followed in coverage, Bituminous is entitled to judgment as a matter of law.

Respectfully submitted

**BITUMINOUS CASUALTY COMPANY**


By:    /s/ Beth C. Boggs
       Beth C. Boggs, #17572
       BOGGS, AVELLINO, LACH & BOGGS, L.L.C.
       7912 Bonhomme Ave., Suite 400
       St. Louis, MO 63105
       (314) 726-2310 PHONE
       (314) 726-2360 FAX
       **Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the Court's Electronic Filing System this <u>18th</u> day of **November, 2011**, to:

Michael A. Dallmeyer
Polsinelli Shughart, PC
Riverview Office Center
221 Bolivar Street
P. O. Box 1069
Jefferson City, MO 65102-1069
(573) 636-8135 - Phone
(573) 636-5226 - Fax
Email: mdallmeyer@polsinelli.com
**Attorneys for Defendant Elexco, Inc.**

Mr. David M. Buffo
David B. Raymond
Husch Blackwell Sanders LLP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
(816) 983-8253 - Phone
(816) 983-8080 - Fax
**Attorneys for Defendants,**
**United HRB General Contractors, Inc.,**
**d/b/a Jeff City Industries, Inc.**
**and Safeco Corporation**

Paul G. White
Neale & Newman, LLP
1949 E. Sunshine, Suite 1-130
Springfield, MO 65804
(417) 882-9090 - Phone
(417) 882-2529 - Fax
Email: pwhite@nnlaw.com
**Attorneys for Defendant,**
**City of Branson, MO**

J. Todd Applegate
Rabbitt, Pitzer & Snodgrass, PC
100 South Fourth Street
Suite 400
St. Louis, MO 63102-1821
(314) 421-5545 - Phone
(314) 421-3144 - Fax
Email: applegate@rpslaw.com
**Attorneys for Defendant**
**Ozark Mountain Consultants, Engineers and Surveyors, Inc.**


   /s/ Beth C. Boggs