IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| BITUMINOUS CASUALTY CORPORATION, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED HRB GENERAL CONTRACTORS, INC. d/b/a Jeff City Industries, Inc., et al., <br><br> Defendants. | Case No. 2:10-CV-04118-NKL |

**O R D E R**

Pending before the Court is Plaintiff Bituminous Casualty Corporation's motion for summary judgment [Doc. # 47] on its claims for declaratory judgment that it is not required to defend Defendants United HRB General Contractors' and Jeff City Industries' (collectively, "Jeff City Industries"), in a separate underlying lawsuit pending against those Defendants. For the reasons stated below, the Court grants summary judgment in favor of Bituminous on all of its claims.

**I.    Factual background[1]**

Bituminous insured Jeff City Industries during the relevant time period under commercial general liability ("CGL") policies. Those policies contain the following basic

---

[1] In considering Bituminous's motion, the Court has drawn all reasonable inferences in favor of Jeff City Industries, the non-movant.

1

provisions:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend against any "suit" seeking those damages.
>
> ...
>
> This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence"...

[Doc. # 47-1 at 85]. The policy also contains the following relevant definitions:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

[Doc. # 47-1 at 97].

> "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:
>
>> a. False arrest, detention, or imprisonment;
>> b. Malicious prosecution;
>> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy...
>> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>> f. The use of another's advertising idea in your "advertisement"; or
>> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".
>
> "Property damage" means:
>
>> a. Physical injury to tangible property, including all resulting loss

2

>> of use to that property...
>> b. Loss of use of tangible property that is not physically injured...
>
> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[Doc. # 48 at 6-8].

Jeff City Industries was the general contractor of the "Table Rock Acres Sewer System Improvements Project," owned by the City of Branson. In October 2008, the City of Branson filed the suit underlying this action in the Circuit Court of Taney County, Missouri, alleging that Jeff City Industries breached the construction contract for that project. Branson asserted claims for action on bond for performance and for breach of contract. On both claims, Branson's petition included identical allegations that Jeff City Industries breached its construction contract because it: "improperly bedded sewer piping," "over-trenched portions of sewer piping," "under-trenched portions of sewer piping," "improperly aligned portions of trenching for the sewer piping," "improperly installed and modified manholes in the sewer system," "improperly sloped portions of the sewer piping," "improperly constructed and/or installed sewer piping anchors," "made improper service line connections to the sewer piping," "caused work to occur outside of easements obtained and existing for completion of the work referenced in the contract documents," and "failed to perform appropriate project clean-up and roadway restoration." [Doc. # 35-3 at 3-4, 5-6].

Ozark Mountain Consultants, a subcontractor of Jeff City Industries and a third-party defendant in the underlying action, brought a cross claim against Jeff City Industries for failure to procure insurance and negligent misrepresentation as to whether Jeff City

Industries procured insurance. Ozark Mountain alleged the following damages on its claim for negligent misrepresentation:

> a. Attorney's fees for the defense of third party plaintiff's claims and the prosecution of this cross claim;
>
> b. Costs to defend plaintiff's action and in prosecuting this cross claim;
>
> c. Time, labor and expense spent by [Ozark Mountain] employees in the defense of plaintiff's and third party plaintiff's claims and the prosecution of this cross claim.

[Doc. # 35-4 at 10-11].

Bituminous brought the following action seeking declaratory judgment that it had no duty to defend Jeff City Industries or Ozark Mountain under its insurance policies. Bituminous argues that Branson's claims against Jeff City Industries do not constitute "occurrences" sufficient to trigger its policy and that Ozark Mountain's claims against Jeff City Industries do not allege "bodily injury" or "property damage" sufficient to trigger its policy.

## II.     Discussion

### A.     Branson's claims against Jeff City Industries

The parties agree that Missouri law controls this dispute. "A liability insurer's duty to defend a suit against its insured is measured by the language of the policy and the allegations of the plaintiff's petition [in the suit to be defended]." *Columbia Mut. Ins. Co. v. Epstein*, 239 S.W.3d 667, 670 (Mo. Ct. App. 2007). If the petition in the suit to be defended "alleges facts that give rise to a claim potentially within the policy's coverage, the

4

insurer has a duty to defend." *Id.* Under Missouri law, claims for breach of contract are not "accidents" and thus are not "occurrences" within a CGL policy. *Id.* at 671. But the facts underlying claims for products liability can constitute "accidents" and thus "occurrences" within a CGL policy. *Id.* at 672.

Bituminous first argues that because Branson's claims against Jeff City Industries are all contractual, these claims do not involve "accidents," are not "occurrences," and thus do not trigger Bituminous's CGL policy. In support of this argument, Bituminous points out that the two claims in Branson's petition against Jeff City Industries in the underlying action both rely solely on contract law. Bituminous further points out that all of the supporting facts alleged by Branson in that petition involve Jeff City Industries' actions in failing to perform a contractual duty, without reference to any inadequate products.

Jeff City Industries argues that Branson's "primary complaint" about Jeff City's work was that the bedding material Jeff City Industries used on the project was defective. [Doc. 51 at 13]. Jeff City Industries does not cite to Branson's petition for this assertion, but rather to an affidavit from the President of Jeff City Industries. Jeff City Industries does not provide any authority suggesting that the Court can consider an affidavit to decide the nature of the underlying suit against Jeff City Industries. In fact, all of the authority cited to the Court by both parties states the contrary–that the Court may only consider the terms of the parties' written policy and allegations in the petition in the underlying suit. *See, e.g., Columbia Mut. Ins. Co. v. Epstein*, 239 S.W.3d 667, 670 (Mo. Ct. App. 2007).

Because Branson's petition in the underlying action only indicates contractual claims,

5

the subject matter of that lawsuit is not an "accident" or "occurrence" triggering Bituminous's CGL policy with Jeff City Industries. This is clearly illustrated by *Epstein*, the case on which Jeff City Industries primarily relies. In *Epstein*, not only did the plaintiff in the underlying claim expressly allege a products liability claim against the insured, *id*. at 669, the court also found that plaintiff "successfully alleged facts supporting a products liability claim" against the insured. *Id.* at 671. Further, only the products liability claim was before the appellate court because the contractual claims had previously been dismissed with prejudice. *Id.* at 672. Thus, the *Epstein* court concluded: "The underlying suit here is a products liability case, not a breach of contract case." *Id*. at 672.

In contrast, Branson's petition in the underlying action does not allege a products liability claim and does not assert any facts suggesting that Branson is pursuing a products liability claim. Jeff City is correct that the petition need only assert claims or facts showing a potential claim that will trigger Bituminous's policy. But the underlying petition in this case does not even hint at a products liability claim, and thus these claims cannot be interpreted as "occurrences" under Missouri law.

Thus, Branson's underlying claim does not involve an "occurrence" under Bituminous's policy and Bituminous has no duty to defend that claim. For this reason, the Court need not consider Bituminous's arguments that the underlying claim only involves economic damages, that additional easements are not "property damage," or that exclusions in the parties' policy apply to this case.

**B.**     **Ozark Mountain's claims against Jeff City Industries**

6

Bituminous argues that Ozark Mountain's cross claim does not trigger Bituminous's insurance policy because the allegations in Ozark Mountain's cross claim petition do not include bodily injury" or "property damage."  Jeff City Industries does not address this argument, but argues only that negligent misrepresentation can be an "occurrence" under a CGL policy–a point that Bituminous concedes for purposes of this motion.

The two cases cited by Jeff City Industries to show that negligent misrepresentation can be an "occurrence" under a CGL policy aid Bituminous in showing that no "bodily injury" or "property damage" is alleged in Ozark Mountain's cross claim.  For example in *Wood*, cited by Jeff City Industries, the "alleged damage was a the subsequent flooding of property Buyer would not have purchased absent the misrepresentation."  *Wood v. Safeco Inc. Co. of America*, 980 S.W.2d 43, 53 (Mo. Ct. App. 1998).  Similarly, in *American States*, the other case cited by Jeff City Industries, the complaint in the case to be defended claimed the underlying plaintiff was damaged by "a decrease in the fair market value of the property, by lost profits and loss of use, including lost rents, lease terminations and accommodations for tenants during construction repairs."  *American States Ins. Co. v. Herman C. Kempker Const. Co., Inc.*, 71 S.W.3d 232, 237 (Mo. Ct. App. 2002).  Ozark Mountain's cross claim petition, however, does not allege physical damages such as flooding or loss of use, or for than matter any property damage, but rather only asserts costs incurred in defending and prosecuting legal actions.  Thus, the Ozark Mountain petition does not allege "bodily injury" or "property damage" and therefore is not covered by the Bituminous policy.

### III.  Conclusion

7

Accordingly, it is hereby ORDERED that the motion for summary judgment filed by Plaintiff Bituminous [Doc. # 47] is GRANTED.

                                                          s/ NANETTE K. LAUGHREY
                                                          NANETTE K. LAUGHREY
                                                          United States District Judge

Dated: December 19, 2011
Jefferson City, Missouri

8

Case 2:10-cv-04118-NKL   Document 53   Filed 12/19/11   Page 8 of 8